387 P.2d 1000

**UNION TANK CAR COMPANY, a New Jersey corporation, Plaintiff and Appellant,**

**v.**

**WHEAT BROTHERS, a partnership, Defendants and Respondents.**

No. 9832.

Supreme Court of Utah.

Jan. 6, 1964.

1.  42 Ohio St. 616, 53 N.E.2d 812 (1944).

———◆———

McKay & Burton, Macoy A. McMurray, Salt Lake City, for appellant.

Ray, Rawlins, Jones & Henderson, Donald B. Holbrook, Salt Lake City, for respondents.

CROCKETT, Justice:

Plaintiff, Union Tank Car Company, a general contractor, sued Wheat Brothers, painting contractors, to recover damages arising from the latter's withdrawal of their bid after the plaintiff had relied upon it in obtaining a general construction contract. At the pretrial the court considered the contentions of the parties as implemented by the depositions and documentary proof presented and granted defendants' motion for summary judgment. Plaintiff appeals.

In September, 1960, Union Tank Car Company submitted a bid to Kaiser Engineers, a prime contractor on an Atomic Energy Commission project at Richland, Washington, for the furnishing, erection and painting of four large steel tanks. In preparing its bid Kaiser Engineers had solicited bids from subcontractors for various parts of the work. Among those submitting bids on the painting was defendants Wheat Brothers, whose bid of $22,498, about $8,000 lower than the other bids, was relied on by Union Tank in entering into the main contract.

By hindsight, that so clearly revealing but all too often futile quality, it is now apparent to everyone that the difficulty which arose and resulted in this lawsuit is that in submitting their bid Wheat Brothers assumed that the painting of the tanks was to be done with an ordinary paint, which would cost about $6.00 per gallon. Whereas, the fact proved to be that the specifications required the interior of two of the tanks to be painted up to a certain level with a particular "phenoline" paint to make them resistant to radiation and thus suitable for storage of high-purity demineralized water, which special paint costs about $26.00 per gallon.

Just what the parties knew, or should have known, and communicated or failed to communicate to each other concerning this high-priced paint is of critical importance in this case.

The negotiations between Union Tank and Wheat Brothers were carried on by a Mr. Clayton Sonderegger for the plaintiff, and John Wheat, one of the defendant partners. August 16, 1960, Sonderegger telephoned Wheat about the job and asked

him if he would like to submit a bid. Wheat responded that he would. Sonderegger gave a brief description of the project, including the dimensions of the tanks to be painted. Wheat said he would call back later in the day and give a price on each tank, which he did. The next day Sonderegger again called Wheat and asked if the price was "all right." Wheat replied affirmatively, whereupon a sheet was sent over to him giving information on the job including the size, type and capacity of the tanks. This sheet did not specify the phenoline paint, but did contain a notation that the job was to be done "as per attached specifications." It is important that Wheat simply placed on this sheet the details of his bid as developed in the telephone conversations. Defendant insists, and it appears correctly so, that it is plain from this sheet that the price for each of the four tanks was figured on the same price per square foot, from which it could readily be seen that Wheat was not aware of, and was not figuring on any exceptionally high-priced paint for two of the tanks. Because Sonderegger so states in his deposition, we must assume that the phenoline paint was mentioned in the telephone conversation, and that the bid sheet referred to above was accompanied by specifications for the job which listed it. But those facts are not controlling because both of the parties appear to have been unaware at that time that this phenoline paint was extra-ordinarily expensive and this latter fact was not mentioned in the conversations.

On the 28th of September, 1960, Sonderegger called Wheat informing him that Wheats' bid for painting the tanks was low; that it had been used by Union Tank in bidding on the Richland job, and again wanted confirmation of the bid because plaintiff planned to take the job within a few days if all subcontract prices were right. Wheat reinterated that the price for painting was all right and also gave assurance that they would be able to furnish a 150% performance bond on the contract if they obtained it.

On October 4th or 5th Union Tank received the anticipated notice of acceptance of its bid from Kaiser Engineers. Meanwhile, at just about that time, Wheat Brothers learned about the extra high cost of this phenoline paint. It is not disputed that after they discovered that fact they acted promptly in notifying Union Tank by letter that their bid was withdrawn. Unfortunately the letter was not received until the day after Union Tank's bid had been accepted by Kaiser.

Union Tank's position is that Wheats' withdrawal of their bid came too late because its own bid to Kaiser had already been accepted and hence it was obligated to go forward on its contract; that the painting eventually cost it about $33,000, and it seeks to recover the difference between this and the Wheat Brothers' bid of $22,498.

Defendants defend on the basis of some fundamental rules of contract law: First, that inasmuch as the parties were engaged in negotiations looking toward a written contract they were at liberty to withdraw their bid at any time before the contract was executed; and second, that even if their bid be regarded as an offer, the plaintiff had made no acceptance in the form of a commitment binding on itself, and that the defendants could therefore withdraw at any time before such acceptance. The plaintiff, however, seeks to go beyond these elemental rules and find refuge in an exception to them. It argues that even if there was no completed contract, inasmuch as the defendants Wheat Brothers had submitted their bid, which they knew the plaintiff was relying on in bidding on the Kaiser project, they could not stand by and allow the plaintiff to become obligated on that contract, then withdraw their bid and leave the plaintiff to suffer a loss which the defendants could and should have avoided by timely action.

■ In support of this proposition plaintiff cites the Restatement of Contract, Section 90: "A promise which the promisor [Wheat] should reasonably expect to induce action * * * of a definite and substantial character on the part of the promisee [Union Tank] and which does induce such action * * * is binding if injustice can be avoided only by enforcement of the promise."[1] We do not question the soundness of that doctrine under proper circumstances.[2] But it is a doctrine of equity which the plaintiff could claim the benefit of only by showing the facts required to justify its application. These would include that the defendants were aware of all the material facts; that in such awareness they made the promise when they knew that the plaintiff was acting in reliance on it; that the latter, observing reasonable care and prudence, acted in reliance on the promise and got into a position where it suffered a loss. Under such circumstances, equity recognizes the unfairness of permitting withdrawal of the promise and will enforce it.[3]

■ In considering the equities between the parties here certain facts are significant: It will be noted, as delineated above, that the negotiations between them were assumed to be about painting the tanks with an ordinary paint; and there is nothing to suggest either that the defendants' attention was called to the fact that this phenoline paint was extraordinarily expensive, or

1. See Drennan v. Star Paving Co., 51 Cal. 2d 409, 333 P.2d 757 which applies this principle.
2. See Easton v. Wycoff, 4 Utah 2d 386, 295 P.2d 332. See generally Corbin, Contracts, secs. 193–209.
3. See Luxen v. Town of Rifle, 100 Colo. 540, 69 P.2d 251 and People v. Ocean Shore RR., 181 P.2d 705 (Calif.Dist.Ct. App.); see generally 31 C.J.S. Estoppel § 114.

that they knew about that fact, until shortly before they acted to revoke their bid.

On the other hand, the position of the plaintiff was substantially different. Initially it had complete control of the situation and could easily have guarded against loss by the exercise of reasonable precautions. It could have executed the contemplated written contract with the defendants; and could have included therein whatever provisions it desired to protect itself if it did not get the Kaiser contract. Or it could have taken care to see that the high price of the phenoline paint was brought to the defendants' attention. It is also important that it was evident that the prices Wheat gave for painting the tanks on the bid sheet were the same as had been developed from the telephone conversations; and further, that the price on each tank was on the same basis per square foot, with no differential as to the tanks requiring the phenoline paint. Plaintiff also knew that there was a great disparity (about 35%) between Wheats' price and the next lowest bid. Yet, notwithstanding these facts, and that although Sonderegger called twice to verify the price, he did not discuss nor mention this important fact concerning the extra high price of the phenoline paint.

Plaintiff has not shown otherwise than that its predicament is very largely of its own making. In our opinion no basis is demonstrated for granting the equitable relief sought. The trial court properly dismissed the action.

Affirmed. Costs to defendants (respondents).

HENRIOD, C. J., and McDONOUGH, CALLISTER and WADE, JJ., concur.