[No. 5766–1. Division One. November 13, 1978.]

R. George Ferrer, *Plaintiff,* v. Taft Structurals, Inc., *Defendant,* Laird B. Peterson, *Respondent,* Elling Halvorson, Inc., *Appellant.*

*Taylor & Ulin, P.S.,* and *Dale R. Ulin,* for appellant.

*Laird B. Peterson,* pro se.

SWANSON, J.—Elling Halvorson, Inc. (hereinafter Halvorson) appeals an award of $8,214.76 to Laird B. Peterson, successor receiver of Taft Structurals, Inc. (hereinafter Taft), contending the trial court erred in adjudging the consideration in a construction contract between Halvorson and Taft. We agree, and remand for modification of the judgment.

Halvorson, a general contractor, elicited various subbids to formulate a bid for construction of an addition to the Veterans Administration Hospital in Seattle. Taft telephoned a bid to Halvorson on November 18, 1971, of $28,200 for materials and labor for structural steel framing—a basic bid of $22,900, plus $5,300 for agreed upon "column extension" work. On that same day, Halvorson submitted a bid for the entire project, comprised of necessary selected subbids, including Taft's. On or about December 3, 1971, Halvorson was awarded the contract and in turn gave Taft the structural steel framing job. During the same month additional corridor work was allotted Taft at the agreed price of $2,631. Thus, Taft's original subcontract bids totalled $30,831.

On December 21, 1971, however, Taft submitted further quotations to Halvorson incorporating the corridor work as agreed, but increasing the original bid quote from $28,200

to $29,987; thus, the total bid then amounted to $32,507. Later, in April 1972, Taft submitted additional bid quotes, separating material costs (the materialman demanded payment directly from Halvorson) from installation costs. These quotes totalled $36,193. Actual construction took place in August 1972, for which Taft was never compensated.

At trial for recovery of the contract price by the successor receiver, the trial court found Taft's initial bid "was relied upon by Halvorson on November 18, 1971, in submitting its overall bid on the project but it was never reduced to writing," and thus was never formally accepted. The trial court instead found the "effective contract price" to be $22,152, the difference between Taft's last bid of April 1972, and the cost of the materials used by Taft but paid for by Halvorson. After subtracting offsets for delay and design errors, the trial court held the amount due to be $8,214.76.

Halvorson takes issue solely with the adjudged contract price, arguing Taft's initial bid constituted an irrevocable offer for a reasonable time and Halvorson's subsequent letting of the job to Taft an adequate acceptance. Halvorson contends Taft's later bid quotes were ineffectual unilateral attempts at modification of an existing contract. We agree, as the doctrine of promissory estoppel controls in this fact pattern.

The prerequisites for an action based on promissory estoppel, a doctrine well recognized in this jurisdiction, have been stated as follows:

(1) A promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

*Corbit v. J.I. Case Co.*, 70 Wn.2d 522, 539, 424 P.2d 290 (1967); *accord, Central Heat, Inc. v. Daily Olympian*, 74 Wn.2d 126, 132, 443 P.2d 544, 44 A.L.R.3d 750 (1968); *Hilton v. Alexander & Baldwin, Inc.*, 66 Wn.2d 30, 400

P.2d 772 (1965); Restatement of Contracts § 90 (1932); Annot., 48 A.L.R.2d 1070 (1956). This concept applies readily to the unique situation of a subcontractor and a general contractor, as exists here. A subcontractor submits a bid to the general contractor, knowing the general cannot accept the bid as an offer immediately, but must first incorporate it into the general's offer to the prospective employer. The general contractor incorporates the bid in reliance upon the subcontractor to perform as promised, should the prospective employer accept the general's offer. Thus, the elements of predictable and justifiable reliance and change of position are satisfied. Numerous courts and authorities have opined that a subcontractor's bid upon which a general contractor relies should be deemed irrevocable for a reasonable time pursuant to the doctrine of promissory estoppel. *Drennan v. Star Paving Co.*, 51 Cal. 2d 409, 333 P.2d 757 (1958); *E.A. Coronis Associates v. M. Gordon Constr. Co.*, 90 N.J. Super., 216 A.2d 246 (1966); *Northwestern Eng'r Co. v. Ellerman*, 69 S.D. 397, 10 N.W.2d 879 (1943); Restatement (Second) of Contracts § 89B(2), comment *e*, illustration 6 (Tent. Draft Nos. 1–7 1973); 1A A. Corbin, *Contracts* § 200 (1963).

Thus, had Taft refused to perform following the award of the contract to Halvorson, a breach of contract action based on Taft's original bid would have been appropriate. It becomes incongruous, then, to hold that the acceptance implied in Halvorson's reliance on Taft's bid became ineffective when Halvorson awarded the job to Taft orally, rather than in writing. We are cited no authority and are aware of none requiring this type of contract to be written. The trial court erred in finding Taft's initial bid never formally accepted.

Nor can Taft's later bid quotes be construed as a modification of an existing contract. The record clearly reflects Halvorson never agreed to any modification of Taft's contract price. Acquiescence or a failure to object by Halvorson cannot effect a modification here either, for Taft's obligations remain constant. Without a mutual

change of obligations or rights, a subsequent agreement lacks consideration and cannot serve as a modification of an existing contract. *Rosellini v. Banchero,* 83 Wn.2d 268, 517 P.2d 955 (1974); *Westland Constr. Co. v. Chris Berg, Inc.,* 35 Wn.2d 824, 215 P.2d 683 (1950); *Queen City Constr. Co. v. Seattle,* 3 Wn.2d 6, 17, 99 P.2d 407 (1940).

The grounds for recovery and legal theories relied upon at trial were often obscure and consistently complex. Although the trial judge attempted to resolve conflicts in as fair and equitable a manner as possible, we must reverse that part of the judgment holding the contract price to be established by the April 1972 bid quotes. Because an adequate meeting of the minds occurred in reliance upon the initial Taft bid, Halvorson was properly liable for no more than that $30,831 figure. As neither party assigns error to the adjudged offsets, we hold the amount owing to equal $3,819.76.

Remanded for entry of judgment consistent with this opinion.

FARRIS, C.J., and WILLIAMS, J., concur.

Reconsideration denied December 20, 1978.