A. Lewis SKANCHY, Fabio T. Sagebin, and Richard D. Wyss, dba Ortope of North America, also dba FTS Imports, Inc., Plaintiffs and Appellees,

v.

CALCADOS ORTOPE SA, Klein Dutra Ltda, and John Does I through X, Defendants and Appellants.

No. 960190.

Supreme Court of Utah.

Feb. 6, 1998.

---

· Mark F. Bell, Betsy L. Ross, Salt Lake City, for plaintiffs and appellees.

Joseph C. Rust, Ian A. Forrest, Salt Lake City, for defendants and appellants.

STEWART, Justice:

This appeal is from a default judgment awarding plaintiffs A. Lewis Skanchy and Fabio T. Sagebin damages· on a promissory estoppel claim. Skanchy and Sagebin entered into a contract with defendant Calcados Ortope, a Brazilian corporation, for Skanchy and Sagebin to sell Calcados' children's shoes as Calcados' sole distributor in the United States and Canada.[1] The complaint alleged that Calcados sold directly to a corporation in Florida and thereby violated plaintiffs' exclusive territorial rights under their distributorship contract. Skanchy and Sagebin alleged claims for breach of contract, promissory estoppel, and fraud and sought compensatory and punitive damages. Calcados failed to respond to the complaint. After the district court entered a default judgment, Calcados moved to set aside the judgment. · The district court denied the motion as to liability but granted it with respect to damages. Skanchy and Sagebin elected to pursue damages on their promissory estoppel claim rather than on the contract claim. The trial court awarded damages in the amount of $167,224 for out-of-pocket expenses and lost wages. Calcados appealed. We hold that the trial court erroneously entered the default judgment on plaintiffs' promissory estoppel claim. We reverse the award of damages and remand to the trial court for further proceedings.

1. Richard D. Wyss was a named plaintiff in the action below, but he did not claim, and was not awarded, any damages. Because Wyss received no recovery in the trial court, Skanchy and Sagebin are the only appellees in this case.

2. Canada was not included in the original contract but was added in a later amendment.

## I. FACTS.

Prior to the summer of 1987, Skanchy worked as an engineer. Sagebin, a Brazilian native, worked as a draftsman at Skanchy's company. Skanchy, Sagebin, and another associate, Richard D. Wyss, entered into business together under the name FTS Imports. Their plan was to import children's shoes. Skanchy and Sagebin left their previous fields of employment and devoted themselves full time to this endeavor. Wyss worked part time. Skanchy, Sagebin, and Wyss commenced a business relationship with Calcados Ortope, a Brazilian company that makes children's shoes. They proceeded for roughly one year under an informal arrangement and then, on July 8, 1988, entered into a written contract that accorded FTS Imports sole territorial rights to distribute Calcados' shoes in the United States and Canada.[2] Skanchy, Sagebin, and Wyss signed the contract on behalf of FTS Imports, which purported to be a corporation but was never properly incorporated. None of the individuals was named in the contract as a contracting party. The contract was written in both English and Portuguese and provided that any legal disputes would be resolved according to the laws of Utah. Calcados also consented to jurisdiction in Utah courts.[3] The contract contained a provision entitled "Fine" which stated that violation of the exclusive territorial rights provision would "be considered a breach of this Contract and in addition shall subject [Calcados] Ortope to a fine of seven per cent (7%) over the amount sold."

· Skanchy and Sagebin later learned of Calcados' sale of children's shoes to Golden Kids, a company that Calcados established in Florida for the purpose of marketing its shoes in the United States.[4] Skanchy and Sagebin alleged that Calcados terminated their contract in mid–1990.

3. The English version stated that this jurisdiction was exclusive, whereas the Portuguese version stated that it was not. The conflict between the two versions is nevertheless immaterial because the parties agree that both versions consent to jurisdiction in Utah.

4. The president of Calcados was also the principal officer of Golden Kids.

In 1994 Skanchy and Sagebin filed suit as individual plaintiffs. They alleged claims for breach of contract, promissory estoppel, and fraud and sought compensatory and punitive damages. The allegations in the complaint referred only to the written contract and the provisions within the contract assigning exclusive territorial rights to plaintiffs. Sagebin's sister Rose Sagebin Schramm, a Brazilian attorney, served the summons and complaint on Calcados' business manager Julio Konrath in Brazil. Konrath claimed that the service was not proper according to Brazilian law. In an affidavit submitted to the court, he stated that he "had some difficulty understanding all of the contentions," "believed that there was no merit to them," and was "generally confused as to the legal significance of [the documents]." He did not, however, profess an inability to read the English language or assert that he mistook the identity of the parties bringing the suit against Calcados.

Calcados ignored the suit, and the court entered a default judgment for $975,000, the amount alleged in the complaint, on each of plaintiffs' three causes of action, for a total judgment of $2,925,000. Thereafter, Calcados moved to set aside the judgments. The trial court denied the motion with respect to liability but ruled, "Inasmuch as there is no sworn statement or other evidentiary submission before the Court as to the amount of damages, the damages award in the Default Judgment should be vacated." Accordingly, a bench trial was held on February 22, 1996, on the issue of damages.

At the trial, Skanchy and Sagebin conceded that their contract claim and their promissory estoppel claim were mutually inconsistent.[5] They elected to pursue damages under their promissory estoppel claim and forego damages under their contract claim.

On the promissory estoppel claim, the trial court ruled that Skanchy and Sagebin incurred losses from detrimental reliance from July 1987 to early November of 1989, the period from the commencement of their informal business relationship with Calcados until they abandoned their shoe distribution efforts. The court awarded Skanchy out-of-pocket costs less sums received in payment for sales of Calcados' shoes, in the amount of $55,224. Skanchy also received $90,000 as lost earnings due to his reliance on the representation of Calcados. The court also awarded Sagebin $22,000 for lost employment earnings. The court refused to award any damages on plaintiffs' fraud claim.

On appeal, Calcados argues that (1) the trial court erred in refusing to set aside the default judgment with respect to liability because of invalid service of process, and (2) the trial court erred in awarding plaintiffs damages under their promissory estoppel claim.[6]

## II. VALIDITY OF SERVICE OF PROCESS

■ We first treat the question whether service of process was valid for purposes of entering a default judgment. Calcados contends that service of the complaint and summons was invalid. If so, the court lacked jurisdiction, the default judgment was therefore void, and the trial court should have set it aside. See Garcia v. Garcia, 712 P.2d 288, 290 (Utah 1986); Meyers v. Interwest Corp., 632 P.2d 879, 880 (Utah 1981). Calcados had the burden of showing that the service was

5. The parties agreed that the "Fine" provision in the contract was a liquidated damages clause that limited recovery for violation of the exclusive territory provision to seven percent of the value of the prohibited sales. The "Fine" provision is somewhat ambiguous. On one hand, it appears to serve the purpose of a liquidated damages provision; on the other, the wording of the heading and of the provision implies that a penalty should be assessed in addition to ordinary contract damages. During discovery, Skanchy and Sagebin referred to the clause as a liquidated damages provision. However, at trial they initially argued that they were entitled to damages above and beyond liquidated damages. They then reversed themselves again and conceded that their recovery under the contract for violation of their exclusive territorial rights was limited to that provided by the "Fine" clause.

6. Calcados also argues that Skanchy and Sagebin did not have a right to sue because they were not the named parties to the contract. This appeal, however, is from damages awarded under a theory of promissory estoppel. Plaintiffs' standing to sue under the contract, therefore, is not strictly relevant to the sole issue before us.

invalid. *Reed v. Reed,* 806 P.2d 1182, 1185 (Utah 1991).

Skanchy and Sagebin maintain that the service of the summons and complaint complied with Rule 4 of the Utah Rules of Civil Procedure, which permits service in a foreign country in a manner provided by the law of the foreign nation or

> [u]pon an individual, by personal delivery; and upon a corporation, partnership or association, by delivering a copy to an officer or a managing general agent; provided that such service be made by a person who is not a party to the action, not a party's attorney, and is not less than 18 years of age, or who is designated by order of the court or by the foreign court.

Utah R. Civ. P. 4(f)(2).

■ Calcados counters that service was invalid for several reasons. First, Calcados asserts that international treaties to which the United States is a signatory provide that service of process must be accomplished in a manner governed by the treaties. Calcados cites two such treaties: the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 [hereinafter Hague Service Convention], and the Inter–American Convention on Letters Rogatory, January 30, 1975, S. Treaty Doc. No. 27 (1984) [hereinafter Letters Rogatory Convention]. The United States is a signatory to both treaties; Brazil is a signatory to the Letters Rogatory Convention but not to the Hague Service Convention.

The Hague Service Convention requires that service be performed according to its terms whenever service of process is issued from one signatory nation to a resident within another signatory nation. *See Volkswagenwerk A.G. v. Schlunk,* 486 U.S. 694, 699, 108 S.Ct. 2104, 2108, 100 L.Ed.2d 722 (1988). "[T]he [Hague] Convention preempts inconsistent methods of service prescribed by state law in all cases to which it applies." *Id.* The Hague Convention requires each "contracting State" to designate a central authority to receive and process requests for service coming from "other contracting States." *See* Hague Service Convention, art. 2. There is no provision in the Convention for designation of authorities by nonsignatory nations. Since a nonsignatory nation cannot designate an authority recognized by the Convention, citizens of signatory nations cannot be required by the Convention to conform with its requirements when effecting service of process in nonsignatory nations. Clearly, the Convention cannot apply to any service of process within a nonsignatory nation. Brazil is not a signatory to the Hague Service Convention, and therefore, the treaty does not bind citizens of the United States when they serve process in Brazil.

■ Both the United States and Brazil are signatories to the Letters Rogatory Convention. That treaty, however, does not prescribe exclusive methods of service. *Kreimerman v. Casa Veerkamp S.A. de C.V.,* 22 F.3d 634, 640 (5th Cir.1994). Letters rogatory, or letters of request, are "merely one of many procedural mechanisms by which a court in one country may request authorities in another country to assist the initiating court in its administration of justice." *Id.* Consequently, the Letters Rogatory Convention does not preempt service of process effected under the Utah Rules.

Calcados also argues that service of process was not valid because Rose Sagebin Schramm, a Brazilian attorney who served the complaint and summons upon Calcados, may have been acting as an attorney for Skanchy and/or Sagebin. If so, the service would be invalid because Rule 4(f) prohibits service of process by a party's attorney. The argument fails because Calcados has offered no evidence to support its claim that Schramm acted as plaintiffs' attorney in any capacity.

■ Finally, Calcados asserts that Konrath, the person who received the complaint and summons, had difficulty understanding those documents and did not believe they were valid under Brazilian law. However, Calcados has not demonstrated how Konrath's unfamiliarity with the documents prevented Calcados from taking appropriate action on the complaint. Konrath was a high-ranking officer of a large company apparently accustomed to undertaking international

business ventures. The named plaintiffs were former business associates with whom Calcados had undertaken a significant contract, a contract that specifically envisioned jurisdiction over disputes in the courts of Utah. Konrath surely should have realized that the documents constituted some sort of legal action related to his company's former relationship with the named parties. If Konrath thought that the summons was invalid, he should have referred the document to legal counsel for a determination of an appropriate response.

In sum, the trial court did not err in refusing to set aside the default judgment for invalid service of process.

### III. DAMAGES AWARD ON PROMISSORY ESTOPPEL CLAIMS

■ When a defendant fails to appear and answer a complaint, the entry of a default does not automatically entitle a plaintiff to a default judgment for the damages claimed in the complaint. There is an important distinction between a default and a default judgment. Rule 55 provides for the entry of default by the clerk of the court whenever a party "has failed to plead or otherwise defend as provided by these rules and that fact is made to appear." Utah R. Civ. P. 55(a)(1). In other words, all that must be shown for the entry of a default is that the defendant has failed to answer the complaint in a timely fashion. *See* 10 *Moore's Federal Practice* § 55.11[3][a] (3d ed.1997).

A clerk of the court may enter a default judgment if a defendant defaults and if the complaint seeks damages for a "sum certain or for a sum which can by computation be made certain." Utah R. Civ. P. 55(b). However, if the damages claimed are unliquidated, a default judgment can be entered only by a judge. *See Russell v. Martell*, 681 P.2d 1193, 1195 (Utah 1984). To enter a default judgment for unliquidated damages, a judge must review the complaint, determine whether the allegations state a valid claim for relief, and award damages in an amount that is supported by some valid evidence. In other words, the allegations in the complaint are not a sufficient basis for awarding unliq-

uidated damages. *See Larsen v. Collina*, 684 P.2d 52, 56 (Utah 1984). That usually means a hearing must be held so that the plaintiff can provide evidentiary support for the award of damages.

■ Moreover, a default judgment is valid only if the well-pled facts show that the plaintiff is entitled to judgment as a matter of law. The uncontroverted allegations of the complaint must be sufficient on their face to establish a valid claim against the defaulting party. *See American Towers Owners Assoc. v. CCI Mechanical, Inc.*, 930 P.2d 1182, 1194 (Utah 1996); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992); *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975). Only well-pled facts alleged in the pleadings of the nondefaulting party are binding and can support the default judgment. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir.1978). Although factual allegations are deemed admitted, a plaintiff's legal allegations are not binding. *See Nishimatsu Constr. Co.*, 515 F.2d at 1206. Accordingly, a court may grant relief only if a valid legal basis supported by well-pled facts is asserted in the complaint. *See CCI Mechanical, Inc.*, 930 P.2d at 1194; 10 *Moore's Federal Practice* § 55.12[1] (3d ed.1997). On appeal from a default judgment, a defendant may contest "the sufficiency of the complaint and its allegations to support the judgment." *Nishimatsu Constr. Co.*, 515 F.2d at 1206.

■ Plaintiffs' complaint alleged only facts related to the written contract between the parties and to Calcados' breach of the exclusive territory provision in that contract. Skanchy and Sagebin did not allege that any promises were made prior to their entering into the contract with Calcados upon which they relied and which led them to quit other employment and devote themselves full time to importing shoes.

*Tolboe Construction v. Staker Paving & Construction*, 682 P.2d 843, 845–46 (Utah 1984), adopted the Restatement (Second) of Contracts § 90, which recognizes promissory estoppel as a valid claim for relief under certain circumstances. Section 90 states in pertinent part:

A promise made which the promisor should reasonably expect to induce action or forbearance on the part of the promisee ... and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Tolboe Construction* held that the elements of a promissory estoppel claim are that (1) the plaintiff acted with prudence and in reasonable reliance on a promise made by the defendant; (2) the defendant knew that the plaintiff had relied on the promise which the defendant should reasonably expect to induce action or forbearance on the part of the plaintiff or a third person; (3) the defendant was aware of all material facts; and (4) the plaintiff relied on the promise and the reliance resulted in a loss to the plaintiff. *Tolboe Construction,* 682 P.2d at 845–46; *see also Andreason v. Aetna Casualty & Surety Co.,* 848 P.2d 171 (Utah Ct.App.1993).

Calcados argues that the trial court erred as a matter of law in awarding damages on a promissory estoppel theory. Plaintiffs' promissory estoppel claim alleges:

16. Defendants made assurances, promises and representations to Plaintiffs relating to Plaintiffs' exclusive right to market Defendants' products in the United States and Canada as described in the Factual Allegations set forth above.

17. Defendants knew or should have known that Plaintiffs would rely on Defendants' assurances, promises and representations.

18. Plaintiffs relied on Defendants' assurances, promises and representations.

19. Defendants failed to abide by the assurances, promises and representations made to Plaintiffs....

The specific promises on which Skanchy and Sagebin assert they relied are alleged in paragraph 16: "Defendants made assurances, promises and representations to Plaintiffs relating to Plaintiffs' exclusive right to market Defendants' products in the United

States and Canada *as described in the Factual Allegations set forth above*" (emphasis added). The "Factual Allegations set forth above" referred only to the promises in the contract.

The court awarded Skanchy and Sagebin reliance damages incurred prior to the execution of the contract. Calcados argues that the existence of the written contract precludes an action for promissory estoppel and that plaintiffs' remedy is for contract damages only. We need not address the issue of whether a party may waive contract damages and sue on a theory of promissory estoppel. Even if Skanchy and Sagebin could maintain a promissory estoppel claim for damages incurred prior to the execution of the written contract, they have failed to allege the facts necessary to support such damages. To be entitled to the damages awarded by the trial court, Skanchy and Sagebin must have alleged that Calcados made promises at the outset of their business relationship on which Skanchy and Sagebin reasonably relied.[7]

Skanchy and Sagebin, however, have not asserted that they relied on a promise which predated their written contract. There is no mention in the complaint of any precontract dealings with Calcados. The trial court presumed, and Skanchy and Sagebin continue to argue, that there was no need to demonstrate that Calcados made a promise of exclusive territorial rights at the outset of the business relationship with plaintiffs. The court and plaintiffs also assumed that there was no need to show that Skanchy and Sagebin suffered all their reliance damages as a direct and independent result of such an exclusive territorial rights promise. The court incorrectly made this assumption on the basis of the default judgment.

On the face of the complaint, the allegations are insufficient to establish a factual basis for the legal conclusion that plaintiffs have a valid claim for relief based on promissory estoppel. The promises that are alleged were merely the promises that were included

---

7. In *Tolboe,* the Court stated, " '[Promissory estoppel] is a doctrine of equity which the plaintiff could claim the benefit of only by showing the facts required to justify its application.' " 682

P.2d at 845 (quoting *Union Tank Car Co. v. Wheat Bros.,* 15 Utah 2d 101, 104, 387 P.2d 1000, 1003 (1964)).

in the written contract. It was therefore error for the trial court to have awarded a judgment for damages based on a promissory estoppel theory that was not properly pled in the complaint, notwithstanding Calcados' default.[8] The judgment for damages under the promissory estoppel claim is reversed, and the case is remanded to the trial court for further consideration, including whether plaintiffs' election to pursue reliance damages is binding and whether Skanchy and Sagebin may amend their complaint without voiding the default, if those issues are raised.

ZIMMERMAN, C.J., HOWE, Associate C.J., and DURHAM and RUSSON, JJ., concur.

---

8. We decline to address the issue whether, given the existence of the contract between the parties, promissory estoppel constitutes a valid claim for relief.