# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MCCLURE AND SONS, INC., a Washington Corporation, | No. 87564-7-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STETNER ELECTRIC, INC. d/b/a STETNER CONSTRUCTION GROUP, a Washington Corporation, | |
| Appellant. | |

BIRK, J. — We are asked whether, when a general contractor incorporates a bid from a subcontractor into its prime bid, the subcontractor is bound by its bid despite conditioning the bid on written acceptance within seven days—written acceptance which it did not receive. Based on the doctrine of promissory estoppel, we answer yes, and affirm.

I

In December 2021, the City of Everett (City) issued solicitation for bids for the Evergreen Pump Station Modification Project. To prepare its bid for the project, McClure and Sons, Inc. (MSI), an industrial contractor, solicited bids from various electrical subcontractors. The bid submission deadline was February 15, 2022, at 2:00 p.m. At 1:30 p.m. on February 15, thirty minutes before the 2:00 p.m. deadline, Stetner Electric, Inc. (Stetner) e-mailed its electrical subcontractor bid to MSI, quoting a price of $2,059,209. At 1:48, Stetner sent MSI another e-mail,

stating, "We've received our final quote. Our pricing is updated now." That e-mail included a bid price of $2,709,000.

Typically, MSI closes all bids to subcontractors and suppliers 15 minutes before the bid submission deadline. This allows them to "write in final numbers" and "physically turn in a bid no later than" five minutes before the deadline. Ten minutes before the bid submission deadline is the "absolute drop dead time" for incorporating bids from subcontractors and suppliers. MSI, relying on Stetner's $2,709,000 bid, "marked up its own prime contract bid with a pen and submitted it to the City just before the deadline." At 1:50:32 p.m., Stetner sent MSI a third e-mail stating, "Incorrect Proposal. Correct is included." This last e-mail included a bid price of $2,850,000. Because MSI was already in the process of submitting its prime bid ahead of the 2:00 p.m. deadline it did not receive the $2,850,000 bid in time to incorporate it into its submission.

Based on MSI's prime bid, which incorporated Stetner's $2,709,00 bid, the City determined that MSI was the apparent lowest bidder for the project. One day later, on February 16, Stetner e-mailed MSI informing it that "[y]esterday definitely did not go as anticipated," and that they were "unable to perform the project for [$2,709,000]." Stetner apologized "for any hassles that [its] typo may have caused," and it indicated that $2,850,000 was the "willingly performable amount" for the project. MSI then submitted a claim of error to the City, seeking not to be awarded the project at the price it had bid, based on Stetner's sub-bid. In March 2022, City staff rejected MSI's claim of error and recommended to the city council that it award the project to MSI at its bid price. MSI secured a preliminary injunction

2

against the city council before it awarded MSI the project. On March 28, 2022, the court dissolved the preliminary injunction, and on March 30, the City awarded the project to MSI for its bid price. Staff recommended to the city council that the City "take all necessary steps to enforce MSI's [$240,000] bid bond" if MSI failed to execute the contract.

On April 4, an MSI division manager, John Ogorsolka, called a Stetner project manager, Rance Ramey, and informed him that MSI had been awarded the project contract. According to Ogorsolka, the two agreed that Stetner would perform its subcontract for $2,850,000. Ogorsolka issued a letter of intent (LOI) to Ramey that same day. Between April 4 and April 7, Ogorsolka exchanged phone calls and e-mails with Ramey and with Stetner's chief executive officer in which Ogorsolka sought Stetner's agreement to perform for $2,850,000. By April 7 Stetner had not signed the LOI, but Ramey assured Ogorsolka that he would call the next day after confirming prices. After MSI received no communication from Stetner on April 8-10, Ogorsolka sent a LOI to EC Electric, the next lowest electrical subcontract bidder, and, on April 12, EC Electric agreed to the electrical subcontract for the project for $3,034,932.

In January 2024, MSI filed a complaint against Stetner alleging claims for breach of contract and promissory estoppel. MSI moved for partial summary judgment as to entitlement. The superior court granted partial summary judgment to MSI, reasoning that "the doctrine of promissory estoppel does apply" and that MSI was entitled to recover. The parties stipulated to damages of $325,932, the difference between Stetner's $2,709,000 bid and the $3,034,932, which MSI paid

3

EC Electric for the electrical subcontracting work. In December 2024, Stetner timely appealed.

II

Stetner argues that the superior court erred in granting summary judgment to MSI because MSI did not accept Stenter's bid in writing within seven days, as required by express language in its bid, and that MSI's reliance on Stenter's bid was unreasonable. Stetner's arguments are unavailing. The elements of promissory estoppel were met, and the superior court correctly granted summary judgment in favor of MSI.

We review a trial court's decision to grant summary judgment de novo. Lakey v. Puget Sound Energy, Inc., 176 Wn.2d 909, 922, 296 P.3d 860 (2013). We perform the same inquiry as the trial court and affirm an order for summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Id. We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. Id.

To prevail on a claim for promissory estoppel, the plaintiff must prove five elements:

> (1) [a] promise which (2) the promisor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise.

Corbit v. J.I. Case Co., 70 Wn.2d 522, 539, 424 P.2d 290 (1967). Promissory estoppel "applies readily to the unique situation of a subcontractor and a general

contractor." Ferrer v. Taft Structurals, Inc., 21 Wn. App. 832, 835, 587 P.2d 177 (1978). "A subcontractor submits a bid to a general contractor, knowing the general cannot accept the bid as an offer immediately, but must first incorporate it into the general's offer to the prospective employer." Id. The general contractor then "incorporates the bid in reliance upon the subcontractor to perform as promised, should the prospective employer accept the general's offer." Id. A "subcontractor's bid is considered an irrevocable offer until the award of the prime contract; then the general contractor's acceptance of the bid results in a bilateral contract." Arango Constr. Co. v. Success Roofing, Inc., 46 Wn. App. 314, 323, 730 P.2d 720 (1986). If the subcontractor breaches this bilateral contract, it is "required to pay as damages the difference between its bid and the higher price the general had to pay another subcontractor to perform the work." Id. at 322.

Here, Stetner promised to do the project's electrical subcontracting work through its $2,709,000 bid—a promise that Stetner should reasonably have expected to cause MSI to change its position by incorporating the bid into its prime bid. MSI did change its position, incorporating Stetner's bid into its prime bid. MSI's reliance on that bid was justifiable, as Stetner had marked its bid "final," and submitted it just 12 minutes ahead of the City's deadline. MSI, in reliance on Stetner's bid, formed a binding obligation with the City to perform the project at a cost based on Stetner's $2,709,000 bid. Stetner later had to pay a different subcontractor $3,034,932 for the work that Stetner promised to do for $325,932 less. The injustice of MSI bearing this increased cost can only be avoided by

5

enforcing Stetner's promise—awarding damages to MSI that cover the difference between what it expected to pay and what it had to pay.

Stetner asks us to read <u>Arango</u> and <u>Ferrer</u> as applying only to oral bids, making them inapplicable here because Stetner submitted its bid in writing. Stetner reasons that because it conditioned its bid on written acceptance within seven days of the bid submission, and MSI did not accept the bid in writing by February 22, the bid was voided and Stetner could not be liable for promissory estoppel or breach of contract. Stetner argues that "it is unreasonable and unjustifiable for promissory estoppel purposes to allow a prime contractor to cherry pick those parts of a subcontractor's bid that it likes and ignore the rest." The "cherry picking" that it refers to is MSI agreeing to Stetner's bid price but not its requirement that acceptance be made in writing within seven days.

To support these propositions, Stetner cites out-of-state authorities that involved significant incongruities concerning the price or scope of work of the subcontractor's bid. See <u>Flintco Pac., Inc. v. TEC Mgmt. Consultants, Inc.</u>, 1 Cal. App. 5th 727, 735, 205 Cal. Rptr. 3d 21 (2016) (general contractor did not reasonably rely on subcontractor's bid price when it did not consider *material conditions that affected the bid price*); <u>Haselden-Langley Constructors, Inc. v. D.E. Farr & Assocs., Inc.</u>, 676 P.2d 709, 711 (Colo. Ct. App. 1983) (general contractor did not reasonably rely on subcontractor's bid that was *"expressly limited to masonry work"* when general contractor mistakenly assumed subcontractor's bid price included insulation work too) (emphasis added)). The salient issue in these out-of-state cases is not that the subcontractors' bids were made in writing, but

that the general contractors claimed to have relied on unilateral assumptions diverging materially from the price and scope of work the subcontractor had bid.

In contrast, MSI accepted Stetner's bid as proposed by incorporating it into its prime bid to the City. It did not reject any material terms. Once MSI incorporated Stetner's bid into its own prime bid and submitted it, Stetner's bid became irrevocable until the award of the prime contract. See Arango, 46 Wn. App. at 323. To allow Stetner's seven day written acceptance condition to make its bid revocable after the City accepted MSI's prime bid would defeat the purposes of promissory estoppel by forcing MSI to bear the cost of Stetner's failure to perform in accordance with its offer.

Whatever complaint Stetner might have had about its ability to perform at a given price, thus perhaps justifying a seven day acceptance window, it communicated with MSI one day after the bid deadline and under the circumstances was aware within a prompt timeframe that the City would likely expect MSI to perform at the price it bid. Because of Stetner's unwillingness, based on its unilateral mistake, to perform at its bid price of $2,709,000, MSI sought relief from the City. When the City rejected MSI's efforts for relief, leaving MSI obligated to the City based on Stetner's $2,709,000 bid, MSI offered to contract with Stetner at Stetner's upwardly revised bid price of $2,850,000, the amount Stetner had earlier referred to as its "willingly performable amount." But Stetner delayed and did not sign MSI's LOI.

Even assuming the possibility that a general contractor's reliance on a subcontractor's bid is not necessarily reasonable in every setting, here MSI's

reliance was reasonable. MSI accepted Stetner's bid and it did not negotiate for or impose any other material conditions upon Stetner. MSI is entitled to recover the price it had to pay to cover for Stetner's failure to perform.

Affirmed.

*Birk, J.*

WE CONCUR:

*Mann, J.*